**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL CONKLIN,**

                **Plaintiff,**             **3:11-cv-979
                                                    (GLS)**

                v.

**MICHAEL ASTRUE,**
Commissioner of Social Security,

                **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Lachman, Gorton Law Firm | PETER A. GORTON, ESQ. |
| P.O. Box 89 | |
| 1500 East Main Street | |
| Endicott, NY 13761-0089 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | VERNON NORWOOD |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

# I. Introduction

Plaintiff Michael Conklin challenges the Commissioner of Social Security's denial of his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Conklin's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

# II. Background

On December 29, 2008, Conklin filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since December 22, 2008 and July 3, 2008, respectively. (*See* Tr.[1] at 57-58, 100-12.) After his applications were denied, (*see id.* at 60-65), Conklin requested a hearing before an Administrative Law Judge (ALJ), which was held on June 30, 2010. (*See id.* at 32-56, 67-68.) On August 31, 2010, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 8.)

Appeals Council's denial of review. (*See id.* at 1-12, 14-31.)

Conklin commenced the present action by filing his Complaint on August 18, 2011 wherein he sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 12, 13.)

### III. <u>Contentions</u>

Conklin contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (*See* Dkt. No. 12 at 8-10.) Specifically, Conklin claims that the ALJ improperly assessed the opinion of his treating sources. (*See id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (*See* Dkt. No. 13 at 10-21.)

### IV. <u>Facts</u>

The court adopts the parties' undisputed factual recitations. (*See* Dkt. No. 12 at 2-8; Dkt. No. 13 at 2-9.)

### V. <u>Standard of Review</u>

The standard for reviewing the Commissioner's final decision under

3

42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

In his only argument, Conklin asserts that the ALJ committed reversible error at step four of the disability analysis by improperly weighing the opinion evidence of two treating physicians and, thus, failing to include certain limitations in his residual functional capacity determination (RFC).[3] (*See* Dkt. No. 12 at 8-10.) Specifically, Conklin contends that the ALJ should have given controlling weight to the opinions of Drs. Richard

---

[2] Specific reference to 42 U.S.C. § 1383(c)(3) is unnecessary because judicial review under that section is identical to review under section 405(g).

[3] A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* §§ 404.1545(a)(3), 416.945(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. 405(g).

4

Sheehan and Douglas Kerr. The court disagrees.

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. §§ 404.1527(c), 416.927(c). Normally, the Commissioner is required to give controlling weight to a treating physician's medical opinions if they are supported by acceptable diagnostic techniques and are not inconsistent with other substantial evidence[4] in the record. *See id.* §§ 404.1527(c)(2), 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

Here, the opinions of Conklin's treating physicians are not only

---

[4] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotations omitted).

inconsistent with other substantial evidence in the record, but with each other, and, thus, were properly not given controlling weight by the ALJ. *See Halloran*, 362 F.3d at 32. Dr. Sheehan opined that, in an eight-hour day, Conklin could sit for less than six hours and needs to alternate between sitting and standing, could not stand for two hours, could lift five to ten pounds for three hours, and more than one ten minute rest period per hour would not be satisfactory, as Conklin would require complete freedom to rest frequently without restriction. (*See* Tr. at 420-21.) In addition, he stated that Conklin is moderately limited in his ability to concentrate and moderately to severely limited in his ability to sustain work pace. (*See id.* at 421.) Finally, Dr. Sheehan reported that sedation and nausea were side effects of Conklin's medications. (*See id.* at 422.) In Dr. Kerr's opinion, in the course of an eight-hour day, Conklin could sit for six hours, but must be able to alternate between sitting and standing, could stand for at least two hours, could only carry five pounds for up to three hours, and would need more than one ten minute rest period per hour. (*See id.* at 423-24.) In addition, Dr. Kerr stated that Conklin's concentration was "limited" and his ability to sustain work pace was severely limited. (*Id.* at 424.) Dr. Kerr also noted that Conklin's medication caused fatigue. (*See id.* at 425.)

The ALJ afforded Dr. Sheehan's opinion "no weight" as it was inconsistent with the record evidence and not well supported. (*Id.* at 25.) The ALJ pointed out that Dr. Sheehan's treatment notes stated that he had no problem writing a note for Conklin for work but "most of it will be from the chart and from what the patient tells [him] since [he] really cannot make [an] assessment as to what [Conklin] can and cannot do for work." (*Id.* at 337, *see id.* at 25.) Notably, the ALJ found that Conklin was not credible with respect to his physical or mental impairments as he had relayed a fabricated story about extensive military service to many of his health care providers. (*See id.* at 24, 49-50, 228, 232, 257, 359, 418.) In fact, Conklin explained to several of his treating physicians, including Dr. Sheehan, that he injured his back and/or knee jumping out of airplanes while in the military. (*See id.* at 226, 232, 249, 251, 257, 356.) However, at the administrative hearing, Conklin testified that he was discharged from the military prior to completing basic training because he re-injured his left knee doing physical therapy. (*See id.* at 49-50.) With respect to Dr. Kerr's opinion, the ALJ afforded it "some, but not controlling, weight" as it was inconsistent with the record as a whole, including Conklin's own assertions that he could lift ten to twenty pounds. (*Id.* at 25, *see id.* at 138, 151.)

7

Notably, the opinion of consultative examiner Justine Magurno demonstrates that Conklin could perform sedentary work given the limitations emanating from his knee and back impairments. (*See id.* at 276-80.) Dr. Magurno diagnosed Conklin with low back pain due to disc disease and left knee pain due to arthritis, and opined that he should avoid uneven ground, heights, ladders and dangerous machinery. (*See id.* at 279.) Further, she found that Conklin was markedly limited in his ability to stand, walk, lift, carry, and repetitively bend. (*See id.*) In addition, Dr. Magurno stated that Conklin had moderate limitations in his ability to perform a single bend, reach, push, and pull. (*See id.*) However, she reported that Conklin was only mildly limited in his ability to sit and had no limitations in his fine motor activity, speech, or hearing ability. (*See id.*) In addition to relying on her medical source statement, the ALJ noted that Conklin reported to Dr. Magurno that his activities of daily living consisted of cooking, cleaning, doing laundry, shopping, caring for his children, showering and dressing whenever he has to. (*See id.* at 24, 277.)

Consultative examiner Sarah Long, performed a psychiatric evaluation of Conklin in March 2009. (*See id.* at 270-275.) Based on her examination, she opined that, among other things, Conklin was able to

8

"maintain attention and concentration, maintain a regular schedule, learn new tasks, and perform complex tasks independently." (*Id.* at 273.) Finally, state agency review psychologist E. Kamin opined that Conklin was not significantly limited in his ability to maintain attention and concentration for extended periods and complete a normal work week without interruptions from psychologically based symptoms and perform at a consistent pace. (*See id.* at 295-96.)

Ultimately, the weight the ALJ afforded to the opinions of Conklin's treating physicians is supported by substantial evidence in the record. Further, because there is substantial evidence in the record to support the ALJ's finding that Conklin can perform "the full range of sedentary work," the court concludes that the ALJ's RFC determination was free from error. (*Id.* at 21.)

## B. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and

9

Conklin's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 8, 2013
Albany, New York

*Gary L. Sharpe*
Chief Judge
U.S. District Court